Supp. 15; Buell v. Van Camp, 119 N. Y. 160, 23 N. E. Rep. 538. In Buell v. Van Camp, supra, Earl, J., said:

"All that is required is that the information furnished by the affidavit shall be such that a person of reasonable prudence would be willing to accept and act upon it. The mere averment, however, of a fact upon information and belief, without more, is not sufficient; but the sources of the information and the grounds of the belief must be stated, so that the judicial officer to whom the affidavit is presented may judge whether the information and belief have a proper basis to rest on."

In 1 Rumsey's Practice, (page 518,) it is said:

"In this case, as in others, a verified pleading is regarded as an affidavit. Code Civil Proc. § 3343, subd. 11. When so used, however, it should comply with the requirements of other affidavits as to the manner of stating the facts."

In the case before us there was no verification by affidavit of the facts stated in the complaint. Such facts having been stated on information and belief only, without any verified statement showing the sources of information or grounds of belief, we think the affidavits were not sufficient to justify the issuing of the attachment. The case of Haebler v. Bernharth, 115 N. Y. 459, 22 N. E. Rep. 167, is not in conflict with this conclusion, as an examination of the appeal book in that case discloses that the allegations in the complaint were positively stated. Moreover, the sufficiency of the plaintiff's affidavits to show that the defendants had removed, or were about to remove, their property from the state with intent to defraud their creditors, or had assigned, disposed of, or secreted, or were then assigning, disposing of, or secreting, their property with like intent, is, to say the least, doubtful. But, as the order must be reversed on the grounds already stated, it is unnecessary to examine this question. It follows, therefore, that the order appealed from should be reversed, and the attachment vacated. Order reversed, with $10 costs and disbursements, and motion granted.

---

HUNT v. GLEASON et al.

(Supreme Court, General Term, Second Department. February 13, 1893.)

MORTGAGE—EVIDENCE OF PAYMENT—RECEIPT.

In an action by an executor to foreclose a mortgage for $1,000 held by his testate, the mortgagor pleaded payment, and offered a receipt signed by decedent in his lifetime. The receipt was drawn to express a payment of interest. It was in the handwriting of defendant's husband, and at the end was added, in the same handwriting, but in a cramped and finer hand, "and principal $1,000 paid." *Held*, where the receipt was at variance with several conversations made by decedent thereafter, showing nonpayment of the principal, and he continued in possession of the mortgage and bond, and defendant knew how a mortgage should be satisfied and canceled, that the receipt was not a sufficient defense.

Appeal from special term, Westchester county.

Action by Daniel Hunt, executor, etc., of Harrison Hunt, deceased, against Ellen Gleason and others, for the foreclosure of a mortgage. From a judgment dismissing the complaint, and directing that the mortgage be satisfied, plaintiff appeals. Reversed.

The following is a facsimile of the receipt referred to in the opinion:

Received of Mrs Ellen Gleason
Sixty dollars due on Bond & Mortgage from Jan.1 1889
to Jan.1st 1888. And Principle 1000 Dollars
$60.00 interest

Morrison Hunt

Argued before BARNARD, P. J., and PRATT, J.

Arthur T. Hoffman, (John H. Clapp, of counsel,) for appellant.
L. C. & W. P. Platt, for respondents.

BARNARD, P. J.   Ellen Gleason, on the 1st of December, 1886, executed and delivered to Harrison Hunt, now deceased, a mortgage for $1,000 on real estate owned by her in Westchester county.   The plaintiff, as the executor of Hunt, brings this action to foreclose the mortgage.   He claims the entire principal, with interest thereon from January 1, 1888.   The defendants aver payment of the bond and mortgage, principal and interest, to Harrison Hunt, in his lifetime.   They produce a receipt given January 1, 1888, purporting to evidence the payment of the bond and mortgage, principal and interest.   The sole question presented is as to the reality and genuineness of this receipt.   It purports to be signed by the deceased owner of the mortgage, and he died in April, 1888.   The bond and mortgage remained in his hands until his death, and passed into the possession of the plaintiff, as his executor.   The mortgage was not, by its terms, due, as to the principal, until January 1, 1890, but it was proven that the mortgagee promised to take the money at any time.   The receipt is drawn by the husband of the mortgagor, and there is sufficient proof as to the genuineness of the signature of the deceased, Mr. Hunt.   The receipt is unusually drawn, and cannot be explained with the other evidence in the case.   On that day the interest was credited by the parties upon a blacksmith bill held by the mortgagor's husband.   The receipt is drawn as if to express a payment of interest only.   It is particular and precise as to the payment of interest from January 1, 1887, to January 1, 1888.   At the end, in a cramped hand, is added, "and principal $1,000 paid." This addition is made by inserting it before the conclusion of the receipt for interest; "$60 interest" follows it.   On the 8th of February a witness, Crothun, states that the deceased said: "We have just been settling up a mortgage."   The mortgage had then been paid over a month, if the receipt is true.   Another witness, Myers, heard the deceased say, two weeks before his death, that Gleason had paid him a lot of money, and he had gone on a two weeks' spree in New York.   This brings the payment near the middle of March, 1888.   Another witness, Hennessy, proves an admission as to the payment made by Hunt on the 8th of April, 1888; and his evidence tends to show it was paid on that day, and was in Hunt's pocket, in bills, at the time.   Another witness, Verder, says little more than that the Hennessy incident was on the 8th of February, 1888. The receipt is adapted to an admitted payment of $60 interest, and to nothing else.   The addition of words, "and principal $1,000 paid," is out of place.   It is cramped in a receipt made for a payment of interest only, and is, although written by Mr. Gleason, written in a different and finer handwriting from the other part of the receipt.   The receipt, if given on the 1st of January, 1888, is at variance with the several conversations showing the nonpayment of the principal as late as February 8, 1888; and near the middle of March, 1888.

The continued possession of the mortgage by Hunt, deceased, is a very strong circumstance against the payment of the principal, $1,000. The defendants knew how to do the business aright, for they had paid a previous mortgage, and had taken a satisfaction piece for the cancellation of the mortgage. There should be a new trial, with costs to abide the event.